UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CATHIE KEMPTER,

        Plaintiff,                            Case No. 12-10261
                                                                   Honorable Thomas L. Ludington

v.

MICHIGAN BELL TELEPHONE COMPANY,
a/k/a AT&T MICHIGAN; TRACY BAIN;
RICK SPIECE; and RENEE GARCIA,

        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS'
MOTION FOR COSTS AND ATTORNEY'S FEES**

This case was dismissed on December 20, 2012 upon Defendants' motion for summary judgment. The Court concluded that Plaintiff had not demonstrated a *prima facie* case with regard to her claim that Defendant Michigan Bell Telephone Company (MBT) violated the Americans With Disabilities Act (ADA). The Court then declined to assert supplemental jurisdiction over Plaintiff's remaining state law claims, and remanded the case to Michigan State court.

Defendants are now headed to the Sixth Circuit to defend Plaintiff's appeal of this Court's order granting Defendants' motion for summary judgment, and to Saginaw County Circuit Court to address Plaintiff's remaining state law claims. Before doing so, however, Defendants filed one last motion — for costs and attorney's fees. Defendants assert that they are entitled to $1,970.25 in costs and $25,000 in attorney's fees. Defendants' motion for costs and attorney's fees will be granted in part and denied in part, and Defendants will be awarded their costs.

**I**

Plaintiff began working for MBT on October 27, 1997.  She worked at MBT's Saginaw Call Center as a customer service representative (CSR).  Her main responsibility was to input customer information into a computer database while speaking with customers over the telephone.  Plaintiff's position involved typing for more than six hours each day, and her union representative, Diana Rodabaugh, testified that the job required "a hundred percent typing and mouse work."

In July 2009, Plaintiff commenced a medical leave to have carpal tunnel surgery, undergoing the operation on July 7, 2009.  On October 22, 2009, Plaintiff's physician, Dr. Arno W. Weiss, imposed restrictions on her ability to type.  Dr. Weiss indicated that Plaintiff could not type for more than two hours each day, and he indicated that the restriction was intended "to be permanent."  Defs.' Mot. Summ. J. Ex. H.

Plaintiff was then evaluated by Dr. B.J. Page on March 10, 2010.  The March 10 evaluation was part of an Independent Medical Evaluation (IME) conducted to determine if Plaintiff qualified for continuing disability leave.  Dr. Page concluded that Plaintiff had "reached maximum medical improvement" and did not require any further treatment.  Pl.'s Resp. Summ. J. Ex. 7, at 5.  Dr. Page explained that Plaintiff could return to work, but should not work "over 40 hours per week" for the "next three months."  *Id*.

On March 22, 2010, Plaintiff was advised by MBT's third party disability carrier that additional time for her medical leave was denied and that she was expected to return to work on March 23.  Plaintiff responded by indicating that she could not perform her old job given her typing restrictions, but was willing to do another job that did not require typing "non-stop all day."  Defs.' Mot. Summ. J. Ex. G.

Plaintiff then waited until March 26, 2010 to return to work. When she arrived, however, she was informed that she was being suspended pending termination because she did not report from March 23–25. Plaintiff received a Suspension Pending Dismissal Letter that outlined the corrective steps that supported her dismissal: a first written warning on May 26, 2005; a final written warning on October 9, 2006, and a suspension on November 13, 2008. Defs.' Mot. Summ. J. Ex. E. Plaintiff had also been suspended on July 2, 2009 based upon unacceptable personal achievement reviews. Kempter Dep. 172. Plaintiff's termination became final on April 19, 2010. Defs.' Mot. Summ. J. Ex. F.

After her termination, Plaintiff filed a written grievance on April 30, 2010. Plaintiff's grievance was pursued through MBT's three step grievance process, but was denied at each step. Plaintiff then filed this complaint, and Defendants moved for summary judgment. Summary judgment was granted regarding Plaintiff's ADA claim because she had not established she was a qualifying individual with a disability under the ADA. Further, even if she could do so, she had not demonstrated she could perform the essential functions of her job, with or without accommodation. After her ADA claim was dismissed, Plaintiff's state-law claims were remanded to state court.

On January 9, 2013, Plaintiff filed notice of her intent to appeal the Court's judgment dismissing her ADA claim.[1] Six days prior, on January 3, 2013, Defendants filed the pending motion for costs and fees.

**II**

Federal Rule of Civil Procedure 54(d) provides: "Unless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the

---

[1] Although Plaintiff indicated the appeal was from this Court's order — *see* Notice of Appeal, ECF No. 23 — she actually will be appealing the judgment that was entered dismissing her case.

prevailing party." Fed. R. Civ. P. 54(d)(1). Under the Rule, "the 'prevailing party' automatically is entitled to costs 'unless the court otherwise directs.'" *Buchanan v. Stanships, Inc.*, 485 U.S. 265, 268 (1988).

Additionally, the ADA provides that, "[i]n any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205.

### III

Defendants moved for the award of costs and attorney's fees. Each is addressed below.

### A

Defendants are entitled to their costs. As the Supreme Court established, this award is automatic unless this Court directs otherwise. *Buchanan*, 485 U.S. at 268. No such direction will be given.

Defendants present receipts for $1,620.25 in court reporter fees associated with discovery depositions, and an additional $350 fee to remove the case to this Court. Accordingly, Defendants will be awarded $1,970.25 in costs.

### B

The determination of whether Defendants are entitled to attorney's fees is more nuanced. Noted above, the ADA contains an attorney fee provision which provides that a court, in its discretion, "may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . . ." § 12205. However, "[a] district court should award such fees to a prevailing defendant in a civil rights action only 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Baker v. Windsor Republic Doors*, 414 F. App'x 764, 780 (6th Cir. 2011) (unpublished)

(quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)).  Whether to award fees in this case is further tempered by the fact that "[a]n award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct."  *Baker*, 414 F. App'x at 780 (quoting *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)).

In *Fox v. Vice*, 131 S. Ct. 2205 (2011), the Supreme Court addressed awarding attorney's fees in civil rights cases.[2]  The Court established that while a trial court has "wide discretion in applying this standard," *id.*, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  *Id*. at 2216.

Application of these standards to this case indicates that Defendants are not entitled to an award for attorney's fees.

To be clear, the Court does not believe this was a close case.  Plaintiff's physician, Dr. Weiss, imposed a permanent restriction on her ability to type, indicating that she could not type for more than two hours each day.  But Plaintiff's position required typing for at least six hours every day.  This was all confirmed by Plaintiff herself when she told MBT on March 22, 2010 that she could not perform her old job given her typing restrictions, but was willing to do another job that did not require typing "non-stop all day."  Defs.' Mot. Summ. J. Ex. G.

Plaintiff's other arguments to support her claim that MBT violated the ADA are equally without merit.  She first asserts that MBT could have "create[d] a job for her which did not

---

[2] Although *Fox* addressed a motion for attorney's fees under 42 U.S.C. § 1988, courts applying the ADA attorney's fee provision "have determined that it should be interpreted in a manner consistent with § 1988." *Falor v. Livingston Cnty. Cmty. Mental Health*, No. 5:02-CV-60, 2003 WL 23220759, at *1 (W.D. Mich. Oct. 20, 2003) (citing *Ritter v. Clinton House Rest.*, 64 F. Supp. 2d 374, 387–88 (D. N.J. 1999); *Webb v. James*, 967 F. Supp. 320, 322 (N.D. Ill. 1997)).

involve any typing whatsoever." Pl.'s Resp. 1. Plaintiff goes on, "if Defendant Employer can create a job for Diana Rodabaugh . . . why couldn't Defendant Employer do so for [Plaintiff]?" *Id*. at 2. This argument falls short of the applicable legal authority. It is well-established that to accommodate a disabled employee under the ADA, "an employer is not obligated to create a position not then in existence." *Hoskins v. Oakland Cnty. Sherriff's Dept.*, 227 F.3d 719, 729 (6th Cir. 2000). *See also Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998) (the ADA does not require "creating a new job, moving another employee, promoting the disabled employee, or violating another employee's rights under a collective bargaining agreement."); *Conklin v. City of Englewood, Ohio*, 98 F.3d 1341, at *2 (6th Cir. 1996) (unpublished) ("While reassignment may be a reasonable accommodation, the ADA does not require [an employer] to create a new position to accommodate [an employee].").

Plaintiff's second argument is that there was a technical associate position at MBT that requires minimal typing, if any, and that she was qualified for the job. Plaintiff cites to excerpts from *Understanding Disability Law* for the proposition that "assignment to a vacant position" is an example of a "reasonable accommodation." Pl.'s Resp. 4 (quoting Mark C. Weber, *Understanding Disability Law*, 2d ed. 68–69).

While this is true, the ADA does not "require an employer to reassign an employee to a position that is not vacant." *Brown v. Chase Brass & Copper Co., Inc.*, 14 F. App'x 482, 488 (6th Cir. 2001) (unpublished) (quoting *Smith v. Ameritech*, 129 F.3d 857, 867 (6th Cir. 1997)); *see also Burns v. Coca-Cola Enter., Inc.*, 222 F.3d 247, 257 (6th Cir. 2000) ("an employer need only reassign a disabled employee to a vacant position."). Plaintiff bears the burden of showing that the clerk position she could have performed was vacant at the time her employment was

terminated.  *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996) *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

In her brief, Plaintiff's counsel argues that this "technical associate" position was vacant when Plaintiff's employment was terminated, and that she "could have been placed in [it], yet Defendant Employer deliberately chose not to." Pl.'s Resp. 3.  But this claim does not comport with Plaintiff's own testimony.

In fact, Plaintiff confirmed just the opposite.  She testified that at the time she was attempting to return to work, March 2010, she did not apply for a technical associate position because "[t]here was no openings at the time.  We had downsized.  It was actually downsized up there.  But, no, there was no openings." Kempter Dep. 75.  Although a man by the name of Keith Hannen was placed in a technical associate position sometime after Plaintiff's employment was terminated, he testified that he did not find out about the job opening until April 2010.  Hannen Dep. 7.  Plaintiff simply has not carried her burden of demonstrating that there were any positions available during March 2010 when she was attempting to return to work.  Accordingly, her ADA claim fails.

However, this is not the type of "extreme" case that warrants the sanction of attorney's fees against a plaintiff.  At the time of suit, in Plaintiff's mind, there was a connection between her carpal tunnel syndrome and her termination.  Moreover, there is no indication from the record that Plaintiff or her counsel engaged in vexatious tactics throughout this litigation.  Therefore, while the Court believes that this case was not particularly close and understands the frustration and expense of defending such a case, this is not an example of the truly rare case in which a plaintiff should be sanctioned for asserting a discrimination claim.

That conclusion might be different had Defendants utilized the power to bring a motion for sanctions under Federal Rule of Civil Procedure 11. Rule 11(c)(2) provides that a motion for sanctions "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Such a motion must be served upon the opposition, but not filed with the court, until 21 days after service. *Id*. This permits the challenged paper, claim, defense, contention, or denial to be withdrawn or appropriately corrected. *Id*. *See also* Fed. R. Civ. P. 11, advisory committee notes, 1993 Amendments, Subdivisions (b) and (c) ("a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation.").

Had Defendants served such a motion upon Plaintiff — questioning the evidentiary support or legal authority for Plaintiff's claims — and had Plaintiff, in the face of such a motion, continued onward, Defendants' quest for attorney's fees may have ended differently. *See Stephenson v. Cent. Michigan Univ.*, No. 11-12681, 2013 WL 306514 (E.D. Mich. Jan. 25, 2013) (defendants were awarded the attorney's fees they incurred when plaintiff refused to abandon her frivolous claims after service of Rule 11 motion for sanctions).

## IV

Accordingly, it is **ORDERED** Defendants' motion for costs and fees, ECF No. 21, is **GRANTED** in part and **DENIED** in part.

- 9 -

It is further **ORDERED** that Plaintiff's counsel is **DIRECTED** to remit to Defendants counsel $1,970.25 in costs.


Dated: March 20, 2013                               s/Thomas L. Ludington
                                                    THOMAS L. LUDINGTON
                                                    United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 20, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS

---